UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATHAN HAVILAND, KEITH OLEARY, and TIMOTHY SHAW on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

HCA HEALTHCARE, INC., a Delaware Corporation doing business as HCA FLORIDA, POINCIANA MEDICAL CENTER, INC., a Florida Corporation; FORT WALTON BEACH MEDICAL CENTER, INC., a Florida Corporation; PALMS WEST HOSPITAL LP, a Delaware Limited Partnership and NORTH FLORIDA DIVISION I, INC., a Florida Corporation; EAST FLORIDA DIVISION, INC., a Florida Corporation,

Defendants.

Case No.: 6:19-cv-00293-RBD-TBS

**CLASS REPRESENTATION**
**DEMAND FOR TRIAL BY JURY**

**AMENDED CLASS COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, Nathan Haviland, Timothy Shaw, and Keith Oleary, on behalf of themselves and all others similarly situated, and allege the following:

**INTRODUCTION**

1. Plaintiffs, Nathan Haviland, Timothy Shaw and Keith Oleary (collectively, Plaintiffs) bring this Complaint against Defendant, HCA Healthcare, Inc., which, doing business as "HCA Florida," operates approximately 50 hospitals and emergency rooms in the State of Florida, and which provided emergency care to Plaintiffs and other similarly situated patients, as well as against Poinciana Medical Center, Inc., Fort Walton Beach Medical Center, Inc., Palms West Hospital LP, and North Florida Division I, Inc.

2. In this action, Plaintiffs' challenge Defendants' unfair, deceptive, and unlawful practice of charging its emergency care patients a substantial undisclosed emergency room fee (hereinafter the "Surcharge").

3. The Surcharge is billed on top of the charges for the individual items of treatment and services provided, but is not disclosed and is effectively concealed from a patient presenting at one of Defendants' emergency rooms.

4. Knowledge of this undisclosed Surcharge, which is essentially a "cover charge" or "surcharge" for being seen in one of Defendants' emergency rooms, would be a substantial factor in an emergency care patient's decision to remain at the hospital and proceed with treatment.

5. This action is limited to individuals who were provided emergency care (or who are financially responsible for the care of another) after presenting at an emergency room facility operated by HCA Florida or one of its affiliates during the last four years.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Defendants.

7. Venue is proper here because one or more Defendants are located in or do business in Osceola County, Florida, and because a portion of the acts and transactions giving rise to this Complaint took place in Osceola County, Florida.

## PARTIES

8. Plaintiffs are informed and believe, and thereon allege, that Defendant, HCA Healthcare, Inc. ("Defendant HCA"), is a Delaware corporation that does business throughout Florida as "HCA Florida."

9. Defendant, Poinciana Medical Center, Inc. ("Defendant Poinciana"), is a

Florida Corporation with its principal place of business in Osceola County, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant Poinciana openly acknowledges its affiliation with Defendant HCA.

10. Defendant, Fort Walton Beach Medical Center, Inc., ("Defendant Fort Walton Beach"), is a Florida Corporation that does business in Fort Walton Beach, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant Fort Walton Beach openly acknowledges its affiliation withDefendant HCA.

11. Defendant, Palms West Hospital LP ("Defendant Palms West"), is a Delaware Limited Partnership that does business in Loxahatchee, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant Palm West openly acknowledges its affiliation with Defendant HCA.

12. Defendant, North Florida Division I, Inc. ("Defendant North Florida"), is a Florida corporation with its principal place of business in Leon County, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant North Florida openly acknowledges its affiliation with Defendant HCA.

13. Defendant, East Florida Division, Inc. ("Defendant East Florida"), is a Florida corporation with its principal place of business in Broward County, Florida. It is a subsidiary or affiliate of Defendant HCA. On its website, Defendant North Florida openly acknowledges its affiliation with Defendant HCA.

14. Defendants conduct business within the State of Florida, have purposely availed themselves of the benefits and protections of this State, and/or have sufficient contact with this State such that maintenance of this action in this locale would be consistent with traditional notions of fair play and substantial justice.

15. Most Defendants are based in Florida, and all operate hospital emergency facilities within the State directly or indirectly.

16. Plaintiff, Nathan Haviland ("Plaintiff Haviland"), is a resident of Osceola County, Florida, over the age of eighteen years, and treated at Defendant Poinciana's emergency room in Osceola County, Florida.

17. Plaintiff, Timothy Shaw ("Plaintiff Shaw"), is a resident of Palm Beach County, Florida, over the age of eighteen years, and treated at Defendant Palm West's emergency room in Palm Beach County, Florida.

18. Plaintiff, Keith Oleary ("Plaintiff Oleary"), is a resident of Okaloosa County, Florida, over the age of eighteen years, and is a guarantor for the treatment provided to his son at Defendant Fort Walton Beach's emergency room in Palm Beach County, Florida.

19. Plaintiffs are informed and believe, and thereon allege, that Defendants own, operate, and/or provide management and billing services to said individual facilities and to other HCA Florida hospitals and emergency facilities.

**AGENCY ALLEGATIONS**

20. Plaintiffs are informed and believe, and thereon allege, that Defendant HCA Florida is one of the largest, private health systems in the State, operating 50 hospitals and 31 surgery centers.

21. Defendant HCA owns, operates and controls the activities of the other hospital defendants, and shares the same location as its principal place of business—One Park Plaza, Nashville, Tennessee.

22. In public documents, Defendant HCA makes clear that it does more than simply monitor its subsidiary hospitals – to the contrary, HCA is directly involved in setting and

enforcing hospital guidelines and is specifically involved in the billing practices of these hospitals.

23. In committing the acts alleged herein, each named hospital defendant is and was the agent of Defendant HCA and acted with the knowledge, consent, permission, cooperation, and authorization of Defendant HCA.

24. Defendant HCA exercises control over each named hospital defendant by developing, authorizing, and controlling their patient admission agreements, as well as their internal policies relating to pricing, billing, and collection practices.

25. At Defendant HCA's direction and with their approval, each named hospital defendant represents itself as being part of Defendant HCA's medical system.

26. In committing the acts alleged herein, each named hospital defendant acted in the course and scope of its agency and was acting with the knowledge, consent, permission, cooperation, and authorization of Defendant HCA.

27. All such actions were ratified and approved by Defendant HCA or its officers, directors, controlling persons, agents, partners, or joint venturers.

28. Defendant HCA perpetuated and/or aided and abetted the wrongdoings of the other named hospital defendants as described herein.

**GENERAL ALLEGATIONS**

29. Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendants used a Conditions of Admission form (hereinafter "Contract"), drafted by Defendants, which terms are not dictated by statute or otherwise, and which all emergency care patients (or their agents) were presented with and requested to sign. Plaintiffs are informed and believe and thereon allege that the contract makes no mention of any Surcharge that is charged in addition to the individual charges for the specific services provided. Further, this

Surcharge is not disclosed on signage posted in or around Defendants' emergency rooms, or verbally during the patients' registration process.

30. Plaintiffs are informed and believe and thereon allege that at all relevant times, Defendants had a practice of charging emergency room patients a hidden and undisclosed Surcharge at all of their Florida Emergency Room Facilities, which Defendants set at one of five levels determined after discharge, and which is based on an internally developed formula known exclusively to Defendant.

31. Plaintiffs are informed and believe and based thereon allege that this substantial Surcharge is not based on the individual items of treatment or services provided to the patient. Rather, it is a Surcharge charged to emergency room patients simply for presenting and being seen at one of Defendants' emergency rooms. Further, it is not disclosed in Defendants' contract, is not visibly posted on signage in or around Defendants' emergency rooms, where a patient would at least have the opportunity of knowing of its existence, and it is not disclosed to patients verbally during the registration process.

32. Thus, Plaintiffs are informed and believe and thereon allege that Defendants failed to inform emergency care patients that they would be billed a substantial undisclosed and unmentioned Surcharge which is charged on top of the charges for individual items of treatment furnished to the patient, and which, if known about prior to treatment, would be a substantial factor in a patient's decision to remain at the Hospital and proceed with treatment.

33. Defendants bills this Surcharge in addition to their charges for the specific services and treatment rendered, even though: (a) this substantial Surcharge is not disclosed to patients in Defendants' contract, in signage posted in or around its emergency rooms, or verbally to patients at the time of registration, (b) emergency care patients cannot reasonably be expected to be aware of this Surcharge, (c) Defendants are well aware that most emergency room patients are unaware of Defendants' intention to add a Surcharge to their bill, and (d)

knowledge of the existence and amounts of this Surcharge would be a substantial factor in influencing a reasonable patient's decision as to whether to remain and seek treatment at one of Defendants' emergency rooms.

34. The failure to disclose the Surcharge is particularly egregious in light of the fact that Defendants represent themselves as, providing care and help to patients in the community.

35. Unlike a normal arms-length transaction between a buyer and seller, a patient seeking medical services at one of Defendants' emergency rooms places a great degree of trust and confidence on the good intentions of the hospital to treat him or her fairly and with compassion.

36. This trust and reliance are heightened by Defendants' Mission Statement that "We act with absolute honesty, integrity, and fairness in the way we conduct our business and the way we live our lives." Defendant HCA states as part of its mission and values: "We are committed to delivering healthcare as it should be: patient-centered and for the good of all people, no matter their circumstance. To achieve this, we must be active; we must be kind. We must work with integrity." Defendants further represent that their single mission is: Above all else, we are committed to the care and improvement of human life.

37. Through these statements and others, Defendants represent to potential patients that they will put the patient's needs first and create a heightened duty to disclose issues including hidden surcharges which are adverse to the patient's interest.

**ALLEGATIONS AS TO REPRESENTATIVE HAVILAND**

38. On or about October 23, 2016, Plaintiff Haviland received emergency treatment at Defendant Poinciana's emergency facility

39. Plaintiff Haviland was a patient, and while there, was presented with and signed Defendant Poinciana's standard form contract.

40. Plaintiff Haviland was not furnished a copy of the contract at the time of signing or upon discharge, and is informed and believes and thereon alleges that the standard practice of Defendants HCA, North Florida and Poinciana is to have emergency care patients (or their legal guardians) sign the contract without providing a copy of the signed contract to the patient at the time of signing or upon discharge.

41. In obtaining treatment/services from Defendant Poinciana, Plaintiff Haviland reasonably expected that he would not be billed for more than the "reasonable value" of the treatment/services received.

42. The total payment amount billed directly to Plaintiff Haviland for the treatment/services provided by Defendant Poinciana was $23,865.59, including an "Emergency Department Level 4" fee of $3,935.25 (but not including over $2,500 in additional physicians' and other non-hospital charges).

43. There exists a dispute as to whether Defendant Poinciana's practice of including substantially hidden and totally undisclosed Emergency Department fees in its billings is an unconscionable billing practice.

44. Plaintiff Haviland is informed and believes that all Class members' billings included, in addition to the charges for the specific services and treatment provided, an undisclosed flat-rate Emergency Department fee based on one of five levels (1, 2, 3, 4 or 5) according to the seriousness and complexity of the patient's condition, with such level being determined based on an undisclosed formula or algorithm after treatment is rendered.

45. Plaintiff Haviland is further informed and believes that these facility fee charges are not disclosed to patients in the contract, not posted on signage in and around the emergency room facilities, and not verbally disclosed or explained to incoming emergency care patients upon registration.

46. Further, Plaintiff Haviland is informed and believes that for all five levels, these fees are grossly excessive and effectively hidden from patients.

47. Thus, all Class members, regardless of what charges they may have incurred for their specific treatment and services, have been subjected to Defendant HCA's unconscionable billing practices as implemented and enforced by Defendants, Poinciana Medical, Fort Walton Beach, Palms West, North Florida, and East Florida, through the inclusion of totally hidden and undisclosed emergency room facility fee charges.

**ALLEGATIONS AS TO REPRESENTATIVE SHAW**

48. On or about January 21, 2019, Plaintiff Shaw received emergency treatment/services at Defendant Palms West, where he was informed and believes and thereon alleges that he was provided with and signed Defendant Palms West's standard form contract.

49. While there, Plaintiff Shaw received no notice or warning, either in the contract, in posted signage in the emergency room, or verbally at the time of registration, as to the substantial Surcharge that Defendant Palms West intended to add (and did add) to his bill on top of the individual charges for each item of treatment and services provided to him.

50. The gross amount (before discounts) subsequently billed for the treatment/services provided to Plaintiff Shaw by Defendant Palms West was $5,437.00, which included a hidden Surcharge of $1,642.00.

51. This Surcharge was hidden in at least the following ways: (a) Defendant Palms West failed to disclose the Surcharge prior to treatment; (b) Defendant Palms West failed to disclose the Surcharge on its billing statement; and (c) even after Plaintiff Shaw requested an itemized billing statement, the Surcharge was described only as "LVL 3 EMER DEPT" which, standing alone and without explanation, is totally meaningless to an emergency care patient and hides the fact that it is a Surcharge, since there is nothing in the description which even remotely identifies this charge to be a "surcharge" or "cover charge" that is added on top of

the charges for individual items of treatment and services.

52. On or about January 25, 2019, Plaintiff Shaw was provided an itemization of Defendant Palms West's services which, among other charges, included a "LVL 3 EMER DEPT" in the amount of $1,642.00 as part of his "Total Amount for Hospital Services" of $5437.00.

53. Defendant Palms West sent an account letter to Plaintiff Shaw on or about January 28, 2019, a week after his hospital visit, that showed an account balance of $5,437.00, and stated that unless a "completed [Financial Assistance Application was] received within 30 days, you will be held responsible for the remaining account balance."

54. Plaintiff Shaw was dismayed when he found out that he had been charged $1,642.00 in addition to all of the individual items of treatment and services as a result of merely being seen in the Defendant Palms West's emergency room.

**ALLEGATIONS AS TO REPRESENTATIVE OLEARY**

55. Upon information and belief, on or about December 18, 2017, Plaintiff Oleary's minor dependent received emergency treatment/services at Defendant Fort Walton Beach's facility.

56. While there, Plaintiff Oleary was provided with and signed Defendant Fort Walton Beach's standard form contract.

57. Plaintiff Oleary received no notice or warning, either in the contract, in posted signage in the emergency room, or verbally at the time of registration, as to the substantial Surcharge that Defendant Fort Walton Beach intended to add (and did add) to his bill on top of the individual charges for each item of treatment and services provided to his dependent.

**58.** The gross amount (before discounts) subsequently billed for the treatment/services provided to Plaintiff Oleary's minor dependent by Defendant Fort Walton Beach was $6,617.41, which included a hidden Surcharge in addition to all of the individual

items of treatment and services as a result of merely being seen in the Defendant Fort Walton Beach's emergency room.

## CLASS ACTION ALLEGATIONS

59. Plaintiffs bring this action on behalf of themselves and a class of all other persons similarly situated, defined as follows:

> The financially responsible individual for any patient who, within the last four years, received treatment at any of Defendants' emergency room facilities located in Florida, and who was charged an emergency room fee which was billed on top of the charges for the individual items of treatment and services provided (the "Class").
>
> Excluded from the Class are any officers or directors of Defendant, together with the legal representatives, heirs, successors, or assigns of Defendant, and any judicial officer assigned to this matter and his or her immediate family.

60. Defendants have collectively and individually acted or refused to act on grounds generally applicable to all the members of the Class and have engaged in a systemwide policy of billing emergency care patients a substantial undisclosed Surcharge, thereby making final injunctive relief concerning the Class as a whole appropriate.

61. This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, predominance, typicality, adequacy of representation, and superiority requirements.

62. Plaintiffs seek to represent an ascertainable Class with a well-defined community of interest in the questions of law and fact involved in this matter.

63. The members of the Class are so numerous that joinder of all members of the Class is impractical. Plaintiff is informed and believes and thereon alleges that the Class consists of at least thousands of persons, but more likely hundreds of thousands of persons.

64. This action involves the question as to whether Defendants' uniform practice of billing emergency care patients for a substantial undisclosed Surcharge is unfair, deceptive, and/or unlawful. This question dominates over any individual issues that might exist.

65. The claims of Plaintiffs are typical of the claims of the Class, and Plaintiffs are members of the Class as defined.

66. To resolve this dispute, Plaintiffs collectively, individually and on behalf of the Class requested, are entitled to a declaration pursuant to Florida's Declaratory Judgments Act and Florida's Deceptive and Unfair Trade Practices Act, Florida Code §§ 86.021 and 501.211, of their legal rights and duties with respect to their payment obligations under the Contract, including a determination as to the conscionability of Defendants' billing practices and an injunction against Defendants' unfair and deceptive acts.

67. Further, the Florida Declaratory Judgment Act is remedial in nature and should be broadly construed. See § 86.101, Fla. Stat.

68. Likewise, the purpose of the Florida Deceptive and Unfair Trade Practices Act is to protect the consuming public against unconscionable, deceptive and unfair business practices. See § 501.202(2), Fla. Stat.

69. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs share the same interests as all Class members because each of the named Plaintiff's claims is typical of those of other Class members.

70. Plaintiffs have retained competent class counsel who are experienced in class action litigation and who will fairly and adequately protect the interests of the Class members.

71. A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since joinder of all Class members is impracticable, and it would be virtually impossible for the Class members to efficiently redress their wrongs individually.

72. Even if all Class members could afford such individual litigation themselves, the court system would benefit from a class action.

73. Individualized litigation would present the potential for inconsistent or contradictory judgments.

74. Individualized litigation of the issues presented by this case would also magnify the delay and expense to all parties and the court system.

75. By contrast, the class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court, as well as an economy of scale and expense.

**FIRST CAUSE OF ACTION**

**Declaratory Judgment**

76. Plaintiffs herein repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs, with the same force and effect as though the same were set forth at length herein.

77. Plaintiffs and members of the Class are entitled to a declaration that Defendants' practice of charging undisclosed Emergency Department facility fees, in addition to the charges for the specific services and treatments provided, is an unconscionable billing practice, and that the contract term which Defendants contend authorizes such charges is unenforceable.

78. Plaintiffs and members of the Class are entitled to a further declaration that Defendant owed Plaintiffs and Class Members a duty to disclose, in advance of providing treatment that would trigger a Surcharge, its intention to charge such a Surcharge, because of (1) the substantial nature of Defendants' Surcharge, (2) the relationship between Defendant and emergency room patients, (3) the hidden nature of Defendants' Surcharge, (4) the general lack of knowledge of emergency room patients as to such a Surcharge, (5) the lack of reasonable opportunity for an emergency room patient to find out about such a Surcharge, and (6) the fact that knowledge as to such a Surcharge would be a material factor in a patient's decision to remain at Defendants' emergency room in order to obtain treatment and services.

79. The declarations sought above are necessary and appropriate since Plaintiffs and the Class have been impacted financially by Defendants' excessive, undisclosed

Surcharge. Even for those patients whose Surcharge has not yet been paid, they should not have to wait until collection efforts are underway, or their credit is ruined by negative credit entries, or lawsuits are instituted by Defendants, before obtaining a legal determination of their obligations with respect to Defendants' Surcharge.

80. Plaintiffs are also entitled to declaratory and injunctive relief to prohibit Defendants from continuing to charge additional undisclosed emergency room fees, and from pursuing existing collection activity on such fees.

81. No monetary damages or restitution are sought in this complaint, and no "reasonable value" determinations as to the services provided to Plaintiffs or any other patient are sought within this action.

## SECOND CAUSE OF ACTION

**Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") Section 501.211(1)**

82. Plaintiffs herein repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs, with the same force and effect as though the same were set forth at length herein.

83. Plaintiffs were not expecting to be billed for a substantial Surcharge that was not mentioned in their contracts, posted on signage in the emergency rooms, or verbally disclosed to them during registration.

84. Such billing by Defendants was, and continues to be, unfair.

85. Defendants' conduct described herein constitutes unfair, deceptive, and/or unconscionable trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") as provided by §§ 501.201-.213, Florida Statutes, including violations of:

a. The standards or unfairness and deception set forth and interpreted by the Federal Trade Commission or by the federal courts, as set forth in FDUTPA, §§

501.203(3)(b) and 501.204; and/or

b. The law against unfair and deceptive trade practices set forth in 15 U.S.C. §§ 45(a)(1) and incorporated into FDUTPA, §§ 501.203(3)(c) and 501.204.

86. Defendants unfairly and unlawfully charge its emergency patients a Surcharge and fail to inform and/or conceals from its patients its uniform policy of billing a substantial undisclosed Surcharge in addition to the charges for individual items of treatment or services provided to the patient.

87. Knowledge of the Surcharge would be a substantial factor in a patient's decision as to whether to remain at the Hospital and proceed with treatment.

88. Upon presenting at Defendants' emergency room facilities, emergency care patients are required to enter into form adhesion contracts drafted by Defendants.

89. Plaintiffs and other patients have no bargaining power with which to negotiate those terms and, therefore, have no choice but to accept the terms of the contracts.

90. The failure to disclose material information is "deception" within the meaning of FDUTPA.

91. Such deception has occurred here, and shown by Defendants' failure to disclose, in their contracts, in signage posted in or around the emergency room facilities, or verbally at patient registration, the hidden and totally undisclosed facility fees which are added to an emergency patient's bill.

92. The Surcharges, if disclosed in advance, would be a material factor in a reasonable patient's decision to remain and accept services in the facility, as opposed to seeking less costly treatment elsewhere.

93. Defendants' conduct described above also amounts to "unfair" business practices which are immoral, unethical, oppressive, and unscrupulous.

94. As a result of Defendants' conduct alleged herein, Plaintiffs have been

aggrieved by the ongoing billing and collection practices of Defendants, and the unconscionable conduct complained of herein, and are entitled to declaratory and injunctive relief to prevent the conduct alleged herein pursuant to § 501.211(1) of FDUTPA, which provides as follows:

> 501.211 Other individual remedies.—
>
> (1) Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for the following relief against Defendants and each of them, as to all causes of action:

1. For an order certifying that this action may be maintained as a class action against Defendants and appointing Plaintiffs and their counsel to represent the Class;

2. For a declaration or declarations as prayed herein;

3. For injunctive relief to enforce the relief prayed for herein;

4. For an order awarding Plaintiffs and members of the Class the costs of their suit, including, but not limited to, reasonable attorneys' fees and expert fees; and

5. For such other and further relief as may be just and proper.

Plaintiffs, on behalf of themselves and the Class, respectfully request trial by jury on all claims so triable.

Respectfully Submitted, DATED: March 25, 2019

*/s/ Jared M. Lee, Esq.*
Jared Michael Lee, Esq.
Florida Bar #: 0052284
Jackson Lee | PA
1991 Longwood Lake Mary Rd
Longwood, FL 32750
Tele: (407) 477-4401
Fax: (407) 477-4949
Jared@JacksonLeePA.com
*Attorney for Plaintiffs*

**Certificate of Service**

I hereby certify that on March 25, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A

*/s/ Jared M. Lee, Esq.*
Jared Michael Lee, Esq.